623 So.2d 486 (1993)
Willie James KING, Appellant,
v.
STATE of Florida, Appellee.
No. 78030.
Supreme Court of Florida.
September 2, 1993.
*487 Bennett H. Brummer, Public Defender and Marti Rothenberg, Asst. Public Defender, Miami, for appellant.
Robert A. Butterworth, Atty. Gen. and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
Willie King appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm King's convictions, but remand for resentencing.
In January 1990 a Costa Rican couple traveled to Miami to buy stock for their boutique. After spending January 10 shopping, they became lost while driving back to their hotel and stopped to ask for directions. The wife asked her husband if she could buy some cocaine, and he assented. They drove around Coconut Grove for a while and agreed to buy drugs from a boy on a bicycle. While they waited for the boy's return, King and two other men approached the car. King shot the woman through the driver's-side window, and, as she slumped over, her husband guided the car out of the area from the passenger's seat. A policeman noticed the car's erratic movement, approached it when it stopped, and discovered what had happened. The woman died two days later from the gunshot wound to the neck. Witnesses identified King as the shooter, and the police arrested him the day after the shooting. Eventually, the state charged him with first-degree murder, attempted first-degree murder, armed robbery, shooting into an occupied vehicle, and possession of a firearm during commission of a felony. The jury convicted him as charged and, after the penalty phase, recommended that he be sentenced to death, which the trial court did.
As his first point on appeal, King argues that the trial court erred by allowing the state to exercise a peremptory challenge against a black prospective juror. During voir dire, the court asked the prospective jurors if any of them had ever seen anyone shot. Three prospective jurors responded to this question: Joseph Forcine said he had witnessed a shooting in a bar; Lawrence Burt responded that he had been shot; and Harrison Ashley said that someone driving by on the street had shot at him. In response to the prosecutor's questions Burt *488 answered that he had been shot by a cousin during a hunting accident. Ashley, on the other hand, told the prosecutor that he could not identify the person that shot at him. When the state attempted to exercise a peremptory challenge to Ashley, a black man, King objected and argued that the challenge could only be racially motivated. The court asked the state to explain its challenge, and the prosecutor stated: "I don't want anybody on this jury that feels that there is a problem or a possibility that the victim of a crime who was shot at could not identify the shooter." After discussing the prosecutor's explanation, the court excused Ashley.
Now, King argues that the state impermissibly singled Ashley out by not asking the other prospective jurors who had been victims of or witnesses to crimes if they could identify the perpetrators. After studying the record, we find no merit to this claim. The victim in this case was shot while sitting immediately next to her husband in the front seat of a car. King also pointed the weapon at the husband and, although he did not fire at the husband, he was convicted of attempted murder of the husband, who, as one of the state's key witnesses, identified King as the shooter. There is a qualitative difference between witnessing a shooting and being the victim of such an act, and we see no abuse of discretion in the court's accepting the state's reason for excusing Ashley.
King also argues that several comments by the prosecutor during opening and closing arguments were so improper as to constitute prosecutorial misconduct[1] and that the trial court erred in overruling his objections to these comments. A conviction will not be overturned unless a prosecutor's comment is so prejudicial that it vitiates the entire trial. State v. Murray, 443 So.2d 955 (Fla. 1984). Any error in prosecutorial comments is harmless, however, if there is no reasonable possibility that those comments affected the verdict. Watts v. State, 593 So.2d 198 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 3006, 120 L.Ed.2d 881 (1992); Murray. After reviewing this record, we conclude that the comments did not affect the verdict and that any error was, therefore, harmless.
The state introduced several photographs of the victim, including a full-length view of the back of her body. The medical examiner said that photograph would put the location of the wound into perspective for the jury, and the court overruled King's objection that the photograph was so shocking as to outweigh its relevance. The test of admissibility of photographs is relevance, and they are "admissible where they assist the medical examiner in explaining to the jury the nature and manner in which the wounds were inflicted." Bush v. State, 461 So.2d 936, 939 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986). The photograph in question meets this test, and we see no error in its being admitted.
Competent, substantial evidence supports King's convictions, and we affirm them. Turning to the sentencing phase, however, several problems require that we vacate King's death sentence and his life sentence for attempted murder and remand for resentencing.
During closing argument at the penalty phase, the prosecutor gave a dissertation on evil that King now argues amounted to admonishing the jurors that "they would be cooperating with evil and would themselves be involved in evil just like" King if they recommended life imprisonment. Closing argument "must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant." Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). Furthermore, if "comments in closing argument are intended to and do inject elements of emotion and fear into the jury's deliberations, a prosecutor has ventured far outside the scope of proper argument." Garron v. State, 528 So.2d 353, 359 (Fla. 1988). We agree with King that the instant prosecutor went too far with this argument and that King must be *489 given a new sentencing proceeding before a jury.
King also argues that the trial judge deferred to the jury's death recommendation rather than making an independent determination of the appropriate sentence and that the findings in support of the death sentence are not unmistakably clear. We remind the judge that, even though a jury determination is entitled to great weight, "the judge is required to make an independent determination, based on the aggravating and mitigating factors."[2]Grossman v. State, 525 So.2d 833, 840 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). As we stated in Holmes v. State, 374 So.2d 944, 950 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980):
There is no prescribed form for the order containing the findings of mitigating and aggravating circumstances. The primary purpose of requiring these findings to be in writing is to provide an opportunity for meaningful review by this Court so that it may be determined that the trial judge viewed the issue of life or death within the framework of the rules provided by statute. It must appear that the sentence imposed was the result of reasoned judgment.
See Lucas v. State, 568 So.2d 18 (Fla. 1990). We also remind the trial judge that in considering mitigating evidence a judge must determine if "the facts alleged in mitigation are supported by the evidence," if such facts as may be established are mitigating factors, i.e., "may be considered as extenuating or reducing the degree of moral culpability for the crime committed," and, if mitigators have been established, whether "they are of sufficient weight to counterbalance the aggravating factors."[3]Rogers, 511 So.2d at 534. The findings in support of a death penalty must be of "unmistakable clarity." Lucas, 568 So.2d at 24.
As the final point to be discussed,[4] we agree with King that he must be resentenced within the sentencing guidelines for his conviction of attempted murder. The guidelines scoresheet produced a presumptive sentence of twenty-two to twenty-seven years for that conviction. The judge, however, departed from that guidelines sentence and imposed a term of life imprisonment. Orally, the judge relied on the unscorable capital conviction as the reason for departure, but wrote only the word "felony" on the scoresheet. Reasons for departure must be in writing, and that single word is insufficient to constitute a written reason for departure. When no written reason for departure is given, an appellate "court must remand for resentencing with no possibility of departure from the guidelines." Pope v. State, 561 So.2d 554, 556 (Fla. 1990). Stewart v. State, 588 So.2d 972 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992); Bruno v. State, 574 So.2d 76 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 112, 116 L.Ed.2d 81 (1991).
Therefore, we affirm King's convictions, but remand for resentencing as set out above.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs specially with an opinion.
BARKETT, Chief Justice, specially concurring.
I concur in the Court's decision. When a prosecutor tells jurors that they will be as *490 evil as the defendant if they fail to vote in accordance with the State's view of the evidence, the error is fundamental and the defendant has been denied the right to a fair trial. See, e.g., Grant v. State, 194 So.2d 612, 613 (Fla. 1967) (finding a contemporaneous objection unnecessary to reverse after the State asked in its closing argument, "Do you want to give this man less than first-degree murder and the electric chair and have him get out and come back and kill somebody else, maybe you?"); Pait v. State, 112 So.2d 380 (Fla. 1959) (despite lack of objection, comments of prosecutor that although the defendant had a right to appeal the jury's decision, the State was unable to do so, and that prosecutor and his staff considered the death penalty appropriate were reversible error); Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987) (finding fundamental error based on improper comments regarding defendant's use of the insanity defense in both opening statement and closing argument despite objections only to opening remarks); Meade v. State, 431 So.2d 1031, 1031 (Fla. 4th DCA) (finding reversible error despite defense's failure to object immediately to prosecutor's argument: "There, ladies and gentlemen, is a man who forgot the fifth commandment, which was codified in the laws of the State of Florida against murder: Thou shalt not kill."), review denied, 441 So.2d 633 (Fla. 1983); Peterson v. State, 376 So.2d 1230 (Fla. 4th DCA 1979) (finding fundamental error where prosecutor made numerous improper comments about, among other things, the heinousness of drug dealing and drug pushers; the danger of permitting the sale of heroin; the defendant personally; and slanderous attacks by defense lawyers against police officers), cert. denied, 386 So.2d 642 (Fla. 1980); Thompson v. State, 318 So.2d 549 (Fla. 4th DCA 1975) (finding that prosecutor's remark in closing, that five police officers could have testified about the statements attributed to defendant even though only one officer actually testified, was reversible error despite lack of objection), cert. denied, 333 So.2d 465 (Fla. 1976).
NOTES
[1] In opening argument and, again, in closing argument the prosecutor mentioned that the victim was a mother. The prosecutor also mentioned during closing argument that King had made two telephone calls to one of his witnesses. The state admits that the references to the victim were error.
[2] We encourage trial judges to state in their findings that they performed the required independent weighing.
[3] The trial judge may have confused proposed mitigating evidence with mitigators when he stated: "The court has considered and weighed all statutory and nonstatutory mitigating factors, and finds that none exist." Immediately prior to this statement, however, the judge wrote that the "proven aggravating factors outweigh the mitigating factors."
[4] Due to our resolution of this case, we do not discuss the other penalty-phase issues raised by King except that we disagree that proportionality precludes a death sentence in this case.