638 So.2d 30 (1994)
Perry TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 80121.
Supreme Court of Florida.
May 5, 1994.
Rehearing Denied June 23, 1994.
*31 James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Perry Taylor appeals his sentence of death. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Taylor was convicted and sentenced to death in May 1989 for the first-degree murder of Geraldine Birch. On appeal, this Court affirmed Taylor's convictions but vacated his sentence and remanded for a new sentencing. Taylor v. State, 583 So.2d 323 (Fla. 1991).[1]
The new jury recommended death by an eight to four vote. The judge found the following aggravating factors: (1) Taylor had a previous felony conviction involving the use *32 or threat of violence; (2) the capital felony occurred during the commission of a sexual battery; and (3) the capital felony was especially heinous, atrocious, or cruel. The court found no statutory mitigators but did give some weight to Taylor's deprived family background and the abuse he was reported to have suffered as a child. The court considered but gave little weight to Taylor's remorse, to psychological testimony that while Taylor has above-average intelligence, he suffers from an organic brain injury, and to testimony concerning Taylor's good conduct in custody. The judge determined that the aggravating circumstances outweighed the mitigating factors and sentenced Taylor to death.
As his first issue on appeal, Taylor argues that the jury should not have been allowed to consider sexual battery as an aggravating circumstance because it unconstitutionally repeats an element of first-degree murder. We have considered and rejected arguments substantially the same as this in Stewart v. State, 588 So.2d 972 (Fla. 1991), and Clark v. State, 443 So.2d 973 (Fla. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984). Taylor's claim is without merit.
Taylor next argues that prospective juror Arnaiz was improperly excused after stating her opposition to the death penalty. Prospective jurors may not be excused for cause simply because they voice general objections to the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 1777, 20 L.Ed.2d 776 (1968). The critical question is whether the prospective juror's views would prevent or substantially impair the performance of her duty under oath and in accordance with the judge's instructions. Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). A prospective juror's inability to be impartial about the death penalty need not be made "unmistakably clear." Id. at 425, 105 S.Ct. at 852. "[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law... . [T]his is why deference must be paid to the trial judge who sees and hears the juror." Sanchez-Velasco v. State, 570 So.2d 908, 915 (1990) (quoting Wainwright v. Witt, 469 U.S. at 424-26, 105 S.Ct. at 852-53). The trial judge's predominant function in determining juror bias involves credibility findings whose basis cannot be easily discerned from an appellate record, Witt, 469 U.S. at 429, 105 S.Ct. at 854, and it is the trial judge's duty to decide if a challenge for cause is proper. Id. at 423, 105 S.Ct. at 851.
Ms. Arnaiz's voir dire responses indicated that her feelings against the death penalty would impair her ability to serve as a juror in a capital case. Ms. Arnaiz asked to be heard privately and was questioned in camera about her beliefs and her ability to objectively follow the court's instructions. After encouragement by defense counsel, Ms. Arnaiz reluctantly agreed that she probably could follow the law despite her opposition to the death penalty. The trial judge found her answers conflicting and properly exercised the court's discretion in excusing Ms. Arnaiz.
Taylor also contends that the court erred in not requiring a Neil[2] inquiry when the State exercised a peremptory challenge of prospective juror Williams. Both Taylor and the victim in this case as well as Mr. Williams were black. Mr. Williams had earlier responded affirmatively when the prosecutor asked if any venirepersons had prior experience with law enforcement officers which would cause them to harbor ill feelings toward police. In addition, Mr. Williams had previously expressed some doubt to the court over whether he could concentrate on jury duty because he was holding two jobs and was worried about lost income. The prosecutor's challenge for cause based on Mr. Williams' employment concerns was denied. When the prosecutor later used a peremptory challenge to strike Mr. Williams, the defense objected and requested a Neil inquiry. The court noted that three black jurors had already been selected and found the defense's representation that the prosecution was excluding blacks to be unconvincing. At the time of this trial, Florida law required the party objecting to a peremptory challenge *33 to make a prima facie showing of a "strong likelihood" of racial discrimination before there was a necessity of inquiring into the challenging party's motivation. Neil, 457 So.2d at 486.[3] In view of the race-neutral reasons for excusal which were already on the record, the court did not err in declining to conduct a Neil inquiry.
Taylor next argues that it was error for the trial judge to consider evidence which had not been provided to the jury and which had not been properly admitted under section 921.141, Florida Statutes (1987). At a hearing held subsequent to the penalty phase proceeding but prior to sentencing, the trial judge allowed a detention deputy to testify that Taylor had attacked him with a homemade razor at the jail. The incident had occurred after the jury had been discharged. The evidence was submitted in rebuttal of the argument in mitigation that Taylor had behaved well in custody. Taylor could not have been prejudiced by the jury's failure to hear this unfavorable testimony. There was no error in the admission and consideration of this evidence. See Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984).
Taylor's remaining claims are without merit.[4] Accordingly, we affirm the sentence of death.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] The facts surrounding the murder are detailed in our original opinion. Taylor v. State, 583 So.2d 323, 325 (1991).
[2] State v. Neil, 457 So.2d 481 (Fla. 1984).
[3] In our recent opinion in State v. Johans, 613 So.2d 1319 (Fla. 1993), we eliminated the requirement of making a prima facie showing of a strong likelihood of discrimination and held that henceforth a Neil inquiry must be initiated whenever such an objection is made.
[4] Taylor also makes the following claims: (1) that the Florida death penalty statute which allows a bare majority death recommendation violates the Constitution; (2) that the death penalty statute conflicts with the Florida Rules of Criminal Procedure; (3) that the penalty phase judge erred in admitting a graphic photo into evidence; (4) that the judge failed to instruct the jury on the intent element of the heinous, atrocious, or cruel aggravating circumstance; (5) that the trial judge failed to instruct the jury specifically on several nonstatutory mitigating factors; and (6) that the sentence of death was not proportional considering the balance of aggravating versus mitigating factors.